UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DALLAS SAFARI CLUB, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 19-cv-03696 (APM) |
| DAVID BERNHARDT, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiffs' Motion to Take Limited Discovery and/or for an Order to the Agency to Supplement the Record, ECF No. 23 [hereinafter Pls.' Mot.]. Plaintiffs are the Dallas Safari Club, the Namibian Ministry of the Environment and Tourism, the Namibian Association of Community Based Natural Resource Management Support Organisations, and a group of individual elephant sport hunters seeking to import their sport-hunted African elephant trophies to the United States. They bring this action to challenge Defendant U.S. Fish and Wildlife Service's ("FWS") failure to act on pending elephant trophy import permit applications under the Administrative Procedure Act ("APA"). Processing of the permit applications is required under the agency's rules, *see* 50 C.F.R. § 13.11(c), and by the APA, 5 U.S.C. § 558(c) (requiring license applications be processed within a "reasonable time"). Plaintiffs allege that FWS is unlawfully refusing to process the permit applications because of tweets by President Trump in 2017. Pls.' Mot. at 1. They assert two claims challenging FWS's alleged blanket "hold" on processing of import permit applications under 5 U.S.C. § 706(2), *see* Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 89–90, and one claim alleging that "FWS is unlawfully withholding processing of Plaintiffs' applications" under § 706(1), *id.* ¶ 91.

Plaintiffs initially moved for a preliminary injunction that would have required FWS to process pending and subsequently filed permit applications. *See* Pls.' Mot. for Prelim. Inj., ECF No. 11. The court denied Plaintiffs' motion on the ground that they had failed to show irreparable harm. *See Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391 (D.D.C. 2020).[1] Shortly thereafter, consistent with the court's March 6, 2020 Scheduling Order, *see* Order, ECF No. 19, Defendants submitted to Plaintiffs the administrative record, comprising all documents and material considered by the agency in making decisions related to the processing of elephant trophy permits, *see* Defs.' Opp'n to Pls.' Mot., ECF No. 27 [hereinafter Defs.' Opp'n], at 5–6.

Having reviewed the administrative record, and finding themselves unsatisfied with its contents, Plaintiffs now ask the court to authorize extra-record discovery. In the first instance, Plaintiffs seek the depositions of FWS Branch of Permits Chief Dr. Mary Cogliano and former Acting Assistant Director for International Affairs at FWS, A. Eric Alvarez, *see* Pls.' Mot. at 1, to get a sense of, among other things, "consideration[s]" that informed the "claimed [agency] 'review'" of elephant trophy imports and the bases for agency decisions, *id.* at 11. In the alternative, Plaintiffs seek an order compelling production of "internal deliberative materials concerning the [agency's] hold on the processing of elephant trophy import permits." *Id.* at 1.[2]

---

[1] The factual background of the underlying matter is set forth in detail in the court's Memorandum Opinion denying Plaintiffs' Motion for a Preliminary Injunction. *See Dallas Safari Club*, 453 F. Supp. 3d at 398.

[2] Plaintiffs frame their request for internal deliberative materials as a request to "supplement the record," but it is more accurately framed as a request for extra-record evidence. To "supplement" the record means to "add[] to the volume of the administrative record [] documents the agency considered" in making its decision. *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). Extra-record evidence, on the other hand, consists of "evidence outside of or in addition to the administrative record that was not necessarily considered by the agency." *Id.*; *see also Dep't of Com. v. New York*, 588 U.S. ___, ___, 139 S. Ct. 2551, 2564 (2019) (addressing separately a request to supplement the record and a request for discovery outside the record). The deliberative materials Plaintiffs seek in this case are considered extra-record evidence because "predecisional and deliberative documents are not part of the administrative record to begin with." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (cleaned up).

For the reasons that follow, the court denies Plaintiffs' motion. "Requiring an agency to produce [] internal materials and allowing litigants to depose agency officials about [their subjective motivation] would be warranted only in the rarest of cases." *Checkosky v. SEC*, 23 F.3d 452, 489 (D.C. Cir. 1994) (per curiam). This is not such a case.

I.

When reviewing agency action under the APA, "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," *Dep't of Com. v. New York*, 588 U.S. ___, ___, 139 S. Ct. 2551, 2573 (2019), and "will go beyond the agency's record only in exceptional cases," *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78–79 (D.D.C. 2010) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)); *see also Camp v. Pitts*, 411 U.S. 138, 143 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). That principle is based on "the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Dep't of Com.*, 139 S. Ct. at 2573 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). It "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

As a preliminary matter, Plaintiffs argue that because this is a "[§]706(1) challenge to agency inaction, the court is not limited to the agency's tendered record." Mem. in Resp. to Opp'n

3

to Mot. for Limited Disc. and/or for Order to Agency to Suppl. the R., ECF No. 28 [hereinafter Pls.' Reply], at 2–5.[3]  The court disagrees.

For starters, Plaintiff would have the court apply different standards of review to different claims, even though they are premised on the same theory of violation.  That makes little sense.  Only one of Plaintiffs' three claims—Count 3—is cast as a failure to act under § 706(1).  *See* Compl. ¶ 91.  Count 3 alleges that, under its own regulations, FWS promises to act on permit applications "as quickly as possible," 50 C.F.R. § 13.11(c), "strongly implying that the applications will be processed within 90 days," Compl. ¶ 91; *see also id.* ¶ 77 (citing 50 C.F.R. § 13.11(c)[4]), and that the agency's failure to abide by these self-imposed time constraints constitutes agency action "unlawfully withheld or unreasonably delayed" under § 706(1), *id.* ¶ 91.  Count 1 rests on a similar premise, but it alleges that FWS's "[f]ailure to follow" its own rule to act "as a quickly as possible," 50 C.F.R. § 13.11(c), is "per se arbitrary and capricious" in violation of 5 U.S.C. § 706(2)(A).  *Id.* ¶ 89.  Under Plaintiffs' logic, the court is confined to the administrative record in determining whether FWS's failure to act was "per se arbitrary and capricious" (Count 1), *id.*, but is permitted to engage in *de novo*, extra-record review to assess whether the processing of their applications was "unreasonably delayed" (Count 3), *id.* ¶ 91.  The court cannot abide such an outcome.

More importantly, Plaintiffs' position is belied by the statutory text of the APA.  Section 706 provides that a reviewing court may (1) "compel agency action unlawfully withheld

---

[3] Because Plaintiffs raise this argument for the first time in their reply brief, Defendants have moved to strike it, or in the alternative, seek leave to file a sur-reply.  *See* Defs.' Mot. to Strike or for Leave to File Sur-Reply Mem., ECF No. 29.  Ordinarily, arguments raised for the first time in a reply brief are considered waived.  *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007).  Here, however, Plaintiffs do not oppose Defendants' filing of a sur-reply.  *See* Opp'n to Mot. to Strike & Resp. to Defs.' Sur-Reply, ECF No. 30, at 4.  For the sake of completeness, the court addresses Plaintiffs' argument and grants Defendants leave to file the sur-reply appended to their Motion to Strike, ECF No. 29-1, which the court has considered in drafting this Memorandum Opinion.
[4] 50 C.F.R. § 13.11(c) advises applicants for "permits for marine mammals and/or endangered and threatened species" to "postmark[ ] [applications] at least 90 calendar days prior to the requested effective date."

or unreasonably delayed" or (2) "hold unlawful and set aside agency action" for various enumerated reasons, and that "in making the *foregoing determinations*, the court *shall review the whole record* or those parts of it cited by a party." 5 U.S.C. § 706 (emphasis added). Nothing in the statutory text distinguishes the scope of record review based on whether the claim is directed at agency action or inaction. And nowhere does the text even hint at extra-record review occurring as a matter of course when agency action is alleged to be "unlawfully withheld or unreasonably delayed."

The cases Plaintiffs cite do little to help their cause. *See* Pls.' Reply at 3–5. In many of them, the discussion of extra-record discovery is dicta or the facts of the cases too dissimilar to this case to be persuasive. *See, e.g.*, *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100–01 (D.D.C. 2013) (considering the availability of relevant records as a factor supporting a motion to transfer to another judicial district); *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (discussing review of an administrative record as an aside in granting discovery on a non-APA issue); *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 37 (D.D.C. 1999) (allowing for testimony to "explain[] the administrative record" given the "novelty of the issues" in the case, "the complexity of decision to be made, and the late filing of a voluminous (thirty-four volume) administrative record").[5] The better reading of the APA is that

---

[5] In a footnote in their reply brief, Plaintiffs cite "another case [in this District] involving FWS's failure to issue elephant trophy import permits" in which the court allowed "substantial discovery." Pls.' Reply at 12 n.9 (citing *Safari Club Int'l v. Babbitt*, Case No. 91-cv-2523 (D.D.C.)). In support of that statement, Plaintiffs append to their brief a printout of the docket and a cover sheet for a deposition of an agency official taken in *Safari Club International*. *See* Pls.' Reply, Exs. 1 & 2, ECF Nos. 28-1, 28-2. According to the Memorandum Opinion and Order resolving the motion to dismiss in that case, it included a constitutional claim. *See Safari Club Int'l v. Babbitt*, Case No. 91-cv-2523 (RCL), 1994 WL 16851092, at *6 (D.D.C. Dec. 15, 1994) ("In Claim VII . . . plaintiff alleges that the use of the Guidelines is a violation of due process and equal protection."). "[T]here are a handful of cases in which courts have allowed discovery on constitutional claims" that are coupled with APA challenges, *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 162–63 (D.D.C. 2017) (providing cases); *see also Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990) (allowing for review of additional affidavits "not before the agency upon administrative review" because the case involved constitutional challenges), which might explain why the court allowed for discovery in *Safari Club International*. Plaintiffs in this case do not raise constitutional claims and have not otherwise shown that extra-record

5

its record review requirement "applies [regardless of] whether a court is reviewing agency action or inaction." *Biodiversity Legal Found. v. Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001); *see also Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 128 F. Supp. 2d 762, 768 n.8 (E.D. Pa. 2000) ("Review of claims based on failure to act and on action taken are generally limited to the administrative record."); *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1271 (D. Colo. 1998) ("The judicial review provisions of the APA do not distinguish between a claim that an agency unlawfully failed to act and a claim based on action taken."); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 570 (N.D. Tex. 1997) ("For either [the §§ 706(1) or 706(2)] standard, judicial review must be based on the administrative record already in existence.").

To be sure, there are some failure-to-act cases where, as a practical matter, judicial review is difficult, if not impossible, absent extra-record evidence. For example, where an agency has failed to act, there simply may not be a record to review because the agency quite literally has done nothing. *See, e.g.*, *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997–98 (D.C. Cir. 1990) (recognizing an exception to the bar on extra-record discovery in "the rare case in which the record is so bare as to frustrate effective judicial review"); *Sierra Club*, 26 F. Supp. 2d at 1271 ("Extra record evidence may be allowed in cases where an agency is being sued for failure to act if the record before the court is insufficient for the court to determine whether the agency unlawfully withheld compliance with a statutory mandate."). And because there is no clear end-point to decision-making when an agency has failed to act, some courts have allowed an agency to supplement the record with relevant documents generated after the agency produced the administrative record. *See, e.g.*, *S.F. BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) (allowing the agency to supplement the administrative record with a later-created document

---

discovery is warranted. Therefore, without more information on the *Safari Club International* court's rationale for allowing discovery, that case is unpersuasive.

6

because there was "no final agency action that close[d] the administrative record"); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560–61 (9th Cir. 2000) (allowing "supplemental material submitted by the Forest Service" to be considered as part of the administrative record because "there [wa]s no final agency action to demarcate the limits of the record"); *NIO v. U.S. Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 242–43 (D.D.C. 2018) (authorizing record supplementation where the document at issue communicated policies and procedures and was an update to a document already in the record).

Neither of those circumstances is present in this case. Far from being "so bare as to frustrate effective judicial review," *Cmty. for Creative Non-Violence*, 908 F.2d at 998, the administrative record in this case contains over 2,600 pages of material considered by FWS regarding its prioritization of permit applications and its ability to act on pending elephant trophy import applications. Nor are Plaintiffs seeking to supplement the record with specific material that was generated after the agency produced the administrative record. Instead, Plaintiffs seek to delve into the agency's subjective motivation and internal decision-making process via depositions and deliberative documents. As Defendants note, even if the court were not limited to review of the administrative record, Plaintiffs would not be automatically entitled to such evidence. *See* Defs.' Mot. to Strike or for Leave to File Sur-Reply Mem., ECF No. 29, Ex. A, ECF No. 29-1, at 7. The Supreme Court's bar on "prob[ing] the mental processes of" agency officials predates the passage of the APA, *see United States v. Morgan*, 313 U.S. 409, 422 (1941), and for the reasons that follow, Plaintiffs have not shown that such an intrusion is warranted in this case.

II.

Where, as here, the administrative record "disclose[s] the factors that were considered" and contains contemporaneous "administrative findings" relevant to the agency's actions, there must

7

be "a strong showing of bad faith or improper behavior before [inquiry into the mental processes of agency decision-makers] may be made." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." (cleaned up)).[6]  Plaintiffs argue that they have made such a showing, pointing to a Department of the Interior Memorandum ("DOI Memo") prepared the day before the administrative record was produced in this case. *See* Pls.' Mot. at 7–8.  As Plaintiffs explain, "[o]n the day before the Administrative Record was due to the Court," *id.* at 7, "DOI Chief of Staff Todd Willens directed a Memorandum to the FWS Director Aurelia Skipwith directing her to continue not to issue elephant import permits," *id.* at 5 (citing AR 240, located in the Joint Appendix, ECF No. 31 [hereinafter J.A.], at 2615).[7]  At the end of the DOI Memo, Mr. Willens provides an explanation for the continued delay in processing elephant trophy import permits:

> Due to the workload and limited resources and staff, the higher conservation risk associated with elephant trophy imports compared to many of the other backlogged permit applications, the controversial nature of these actions, and ongoing litigation regarding elephant trophy imports creating uncertainty, the Department of the Interior has decided to prioritize the allocation of existing resources to other categories of work and is not altering the

---

[6] Defendants fault Plaintiffs for not "mention[ing] the 'unusual circumstances' standard utilized in the D.C. Circuit to evaluate requests for record supplementation," Defs.' Opp'n at 10, but that is not the standard when, as here, a movant seeks discovery of the agency's decision-making process, *see Com. Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998); *see also In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 156 F.3d 1279, 1279–80 (D.C. Cir. 1998) ("Agency deliberations not part of the record are deemed immaterial . . . unless there is a showing of bad faith or improper behavior," or "no administrative record to review." (citing *Overton Park*, 401 U.S. at 420)).
[7] Citations to the Joint Appendix are to the page numbers in the administrative record.

8

> instruction given to FWS to refrain from issuing final decisions on applications for permits to import elephant trophies at this time.

*Id.* at 6 (quoting J.A. at 2615).

Characterizing the DOI Memo as a "classic [ ] post hoc rationalization," *id.* at 5, Plaintiffs first contend that its timing alone "justifies the Court to order the record [be] supplemented by internal decisional materials and limited discovery," *id.* at 8. Not so. Because this is an unreasonable delay case, the timing of the DOI Memo is not, by itself, dispositive of bad faith or improper behavior. Until the agency takes the action Plaintiffs seek—the processing of the pending elephant trophy import permit applications—there is no defined end-point to the administrative record. As discussed, *supra* Section I, courts allow, and sometimes order, agencies to supplement the record with relevant materials in such cases. *See, e.g.*, *Friends of the Clearwater*, 222 F.3d at 560–61; *S.F. BayKeeper*, 297 F.3d at 886; *see also Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (affirming district court's decision allowing an agency decision-maker to supplement the record with a declaration providing useful background explanation of the agency's decision). In this case, the DOI Memo was produced prior to the production of the administrative record and contains the rationale of a decision-maker with authority to speak on its contents; it therefore is not necessarily an example of post hoc rationalization. *See Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 337 (D.C. Cir. 2011) ("The '*post hoc* rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment . . . and bars it from further articulation of its reasoning," but instead "is a rule . . . forbid[ding] judges to uphold agency action on the basis of rationales offered by anyone other than proper decisionmakers." (internal quotation marks and citation omitted)); *cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ___, ___ 140 S. Ct. 1891, 1909 (2020) (rejecting the reasoning of later-issued memorandum of

agency official explaining rescission of Deferred Action for Childhood Arrivals program as a *post hoc* rationalization because the record contained no contemporaneous support for the rationale).[8]

Plaintiffs next contend that "both the timing and the substance" of the DOI Memo, combined with "the absence of any rationale prior thereto, and the admitted role President Trump's November 2017 tweets played in the agency's initial decision to cease processing the[] applications . . . strongly suggest the reasons given in the . . . [Memorandum] are pretextual." Pls.' Mot. at 10. Therefore, they argue, "an order from this Court requiring the agency to supplement the Administrative Record to include internal decisional materials [is warranted] so the Court may pass on the bona fides of the agency's explanation for its decision." *Id.* at 10–11. That argument reflects a fundamental misunderstanding of this court's role in reviewing agency action.

"When a party challenges agency action as arbitrary and capricious, the reasonableness of the agency's action is judged in accordance with its stated reasons." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency* (*Subpoena Duces Tecum*), 156 F.3d 1279, 1279 (D.C. Cir. 1998) (citation omitted). The "actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior." *Id.*; *see also Norris & Hirshberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947) (holding that materials used as part of the agency's "internal decisional process [] may not be probed"). Even "[w]here there is no administrative record to review," as may be the case in a failure-to-act challenge, "the party challenging the agency action may inquire into the decisionmaking process in order to create such a record, but it does not necessarily follow that the party can also probe subjective motivations." *Subpoena Duces Tecum*, 156 F.3d at 1280 (citing

---

[8] To be clear, the court does not conclude—and does not establish as the law of the case—that the DOI Memo's rationales are not *post hoc*, only that Plaintiffs have failed to make that showing based solely on when the Memo was issued.

*Overton Park*, 401 U.S. at 420).  Thus, absent a showing of "bad faith or improper behavior," *Subpoena Duces Tecum*, 156 F.3d at 1279, this court cannot, as Plaintiffs urge, "pass on the bona fides of the agency's explanation" by probing the subjective intent of decision-makers, Pls.' Mot. at 11.

Plaintiffs' attempt to equate this case to the Supreme Court's decision in *Department of Commerce v. New York* is unpersuasive.  *See id*. at 6–7.  In that case, the Court considered whether the trial court had properly found that the Secretary of Commerce's rationale for including a citizenship question on the 2020 Census was pretextual.  *See* 139 S. Ct. at 2573.  In a March 2018 memorandum, the Secretary announced that he had decided to reinstate a question about citizenship on the 2020 decennial census questionnaire based on "the request of the Department of Justice (DOJ), which sought improved citizen voting-age population for purposes of enforcing the Voting Rights Act" ("VRA").  *Id.* at 2562.  Shortly after the litigation began, however, the Secretary "filed a supplemental memo that added[] new pertinent information to the administrative record," including the fact that "the Secretary had been considering the citizenship question for some time and that Commerce had inquired whether DOJ would formally request reinstatement of the question."  *Id.* at 2574.  "That supplemental memo prompted respondents to move for both completion of the administrative record and extra-record discovery," both of which the trial court granted after finding that "the existing evidence supported a prima facie showing that the VRA rationale was pretextual."  *Id*.  Although the Supreme Court found the trial court's order granting extra-record discovery was premature based on the record at the time, "in light of . . . the extra-record evidence" that came later, the Court concluded the order had nevertheless been "justified."  *Id.*  The Court explained,

> [t]hat [later-added] evidence showed that the Secretary was determined to reinstate a citizenship question from the time he

> entered office; instructed his staff to make it happen; waited while Commerce officials explored whether another agency would request census-based citizenship data; subsequently contacted the Attorney General himself to ask if DOJ would make the request; and adopted the Voting Rights Act rationale late in the process. In the District Court's view, this evidence established that the Secretary had made up his mind to reinstate a citizenship question "well before" receiving DOJ's request, and did so for reasons unknown but unrelated to the VRA.

*Id.* "[U]nlike a typical case in which an agency may have both stated and unstated reasons for a decision," the Court observed, the Secretary's "VRA enforcement rationale—*the sole stated reason*—seems to have been contrived." *Id.* at 2575 (emphasis added).

This case differs from *Department of Commerce* in two important respects. First, far from being uncovered by late-breaking record evidence, the purported actual reason for delaying permit processing—President Trump's tweets—is hidden in plain sight. The DOI Memo on its face acknowledges the President's November 2017 tweets. *See* J.A. at 2614. And after President Trump first tweeted on the subject, then-Secretary of the Interior Ryan Zinke publicly responded, announcing a hold on elephant trophy import permit issuance. *See* J.A. at 446.

Second, unlike *Department of Commerce*, where the Court found "the sole stated reason" for the Secretary's action had been "contrived," 139 S. Ct. at 2575, here, each of the agency's stated reasons finds at least some support in the record. The Memo articulates four reasons for ordering FWS to continue refraining from processing elephant trophy permit applications: 1) the agency's "workload and limited resources and staff," 2) "the higher conservation risk associated with elephant trophy imports compared to many of the other backlogged permit applications," 3) "the controversial nature of these actions," and 4) "ongoing litigation regarding elephant trophy imports." J.A. at 2615. The parties devote enormous time debating whether these explanations are adequately supported in the record. The court views these arguments as premature. They sound in merits contentions and thus are more appropriately vented and considered on cross-

motions for summary judgment. At this stage, it suffices to say that the court has reviewed the portions of the record presented and finds that none of the reasons contained in the DOI Memo are so lacking in credibility or so contradicted by other evidence as to suspect them to be contrived. In other words, the record excerpts do not demonstrate bad faith or improper conduct by agency decision-makers.

### III.

For the foregoing reasons, Plaintiffs' Motion to Take Limited Discovery and/or for an Order to the Agency to Supplement the Record, ECF No. 23, is denied. The parties shall meet and confer about a summary judgment briefing schedule and appear for a telephonic status conference at 12:00 p.m. on February 17, 2021.

Dated: February 9, 2021

Amit P. Mehta
United States District Court Judge